Thomas E. JONES, Jr., Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000328–MR.

Supreme Court of Kentucky.

Dec. 22, 2011.

Samuel N. Potter, Department of Public Advocacy, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Christian Kenneth Ray Miller, Assistant Attorney General, Office of the Attorney General, Office of Criminal Appeals, Frankfort, KY, for appellee.

Opinion of the Court by Justice VENTERS.

When Appellant, Thomas E. Jones Jr., pled guilty to third-degree rape and other charges, the trial court imposed a twenty-year prison sentence and ordered him to pay $288,000.00 in restitution, $175.00 in court costs, and a jail fee of $5,126,00. While he does not deny his guilt and he does not challenge the conviction or the prison sentence imposed for his crimes, he appeals to this Court as a matter of right under Ky. Const. § 110(2)(b) to challenge

the pecuniary aspects of the sentence imposed.

Specifically, Appellant argues that restitution was imposed against him in a manner that violated his right to due process guaranteed under the Kentucky Constitution and the United States Constitution, as explained in *Fields v. Commonwealth*, 123 S.W.3d 914 (Ky.App.2003). He also contends that the trial court's judgment with respect to restitution exceeded the $100,000.00 limit established by KRS 533.030(3). Finally, he contends that the court costs and jail fee were assessed in violation of KRS 534.030(4) because he was before the court as an indigent person.

The Commonwealth concedes that the assessment of court costs was improper and so we will reverse that aspect of the judgment without further discussion. For the reasons set forth below, we also reverse the judgment insofar as it imposes restitution, and we remand this matter to the trial court for a new hearing on the question of restitution. We affirm the imposition of the jail fee.

## I. BACKGROUND

On several occasions, Appellant, then 37 years old, had sex with K.E., a 15–year–old girl. As a result, she was infected with herpes. He also provided alcohol to K.E. and her underage friends at a New Year's Eve party. Appellant was subsequently indicted on three counts of third-degree unlawful transaction with a minor and one count of third-degree rape, one count of first-degree unlawful transaction with a minor, and being a first-degree persistent felony offender.

Appellant entered into a plea agreement with the Commonwealth in which he agreed to plead guilty to third-degree rape, first-degree unlawful transaction with a minor, and one of the three counts of third-degree unlawful transaction with a minor. In exchange, the Commonwealth agreed to dismiss the remaining charges, including the persistent felony offender charge, as well as other charges contained in an unrelated indictment in a different county. The Commonwealth also agreed to recommend prison sentences of fifteen years for the first-degree unlawful transaction, five years for the third-degree rape, and twelve months on the third-degree unlawful transaction charge, with no recommendation as to whether the sentences should be served concurrently or consecutively. There was no discussion of restitution.

Appellant entered his guilty plea as agreed. Other than the express terms of the plea agreement, Appellant's plea was without conditions.[1]

At the sentencing hearing, the judge duly considered the pre-sentence investigation report and heard the Commonwealth's recommendation to impose the agreed upon sentence. Restitution was again not mentioned. The judge then permitted K.E. and her mother to address the court to describe the effects of Appellant's crimes upon their lives, including the fact that K.E. was infected with herpes. The mother said to the court that K.E. "has a lot of problems because of [Appellant's crimes]. She takes medicine every day for the herpes, something she's going to live with the rest of her life. The medicine alone is over $600.00 a month. I had to fight the insurance company to pay. Later, we will have to pay."

---

1. RCr 8.09 provides, "With the approval of the court a defendant may enter a conditional plea of guilty, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified trial or pretrial motion. A defendant shall be allowed to withdraw such plea upon prevailing on appeal."

Following those remarks, the judge imposed the agreed upon sentences, to be served consecutively for a total of twenty years. Then, he added the following:

> Court costs [are] assessed in the amount of $175.00. You've got 233 days you've got to pay back to the Hickman County Jail. That's a total of $5,126.00 that you owe to the Hickman County Jail. You are also going to pay all [the victim's] medical expenses for herpes at $600.00 a month for forty years. I just calculated that up, that's $288,000.00.

Then, after warning Appellant that his failure to pay the restitution following his eventual release from prison could result in additional imprisonment for contempt, the judge embellished upon the sentence by saying to Appellant:

> It's not within my power to have you shot or hung. If it was, that's most likely exactly what I'd do. And I will make you at least suffer something out of pocket that she's got, and her suffering goes far past whatever the medicine may cost.

The restitution award, court costs, and the jail fee were then written into the judgment form and the matter was concluded.[2] Appellant did not present in the trial court any of the objections that he now raises in this appeal. We, therefore, look first at the Commonwealth's claim that the matters are not subject to appellate review.

## II. PRESERVATION OF ISSUES FOR APPELLATE REVIEW

Appellant acknowledges that he did not preserve the issues with a contemporaneous objection, but argues that because the imposition of restitution, fines and court costs is a "sentencing issue," his failure to object does not result in a waiver.[3] See Cummings v. Commonwealth, 226 S.W.3d 62, 66 (Ky.2007) (holding that because "sentencing is jurisdictional," "sentencing issues" may be raised for the first time on appeal.). In the alternative, he requests palpable error review under RCr 10.26. The Commonwealth responds that the issues Appellant raises are not "sentencing issues," and that because he failed to object in the trial court, his only avenue for appellate review is by way of palpable error. The Commonwealth further contends that, even if we review the order for palpable error, the trial court's ruling is correct.

While the phrase, "sentencing is jurisdictional" has been applied in published and unpublished opinions of this Court and the Court of Appeals more than 25 times since it first appeared in Wellman v. Commonwealth, 694 S.W.2d 696 (Ky.1985), its meaning remains somewhat obscure. We begin, therefore, with an explanation of that term. We follow with a consideration of whether the matters that Appellant now raises are true "sentencing issues" which qualify for appellate review without preservation, or whether they are simply procedural errors subject to palpable error review under RCr 10.26.

---

**2.** We note that, ironically upon the conclusion of the sentencing hearing, the trial judge advised Appellant that he had a right to appeal the judge's ruling. Of course, his comment has no effect on whether an issue is actually appealable. Murty v. Lexington–Fayette Urban County Airport Board, 612 S.W.2d 765 (Ky.App.1981).

**3.** At sentencing, neither Appellant nor his counsel objected, or even responded, when the trial judge added court costs, a jail fee, and restitution to the sentence. However, given the trial judge's stated preference for having Appellant "shot or hung," one can hardly fault Appellant or his lawyer for remaining silent lest they further annoy an already agitated judge.

■ *Shannon v. Commonwealth*, 562 S.W.2d 301 (Ky.1978) held that although the imposition of consecutive life sentences violated KRS 532.080(6)(a), a defendant's failure to preserve the issue with an objection in the trial court barred appellate review of the issue. In 1985, *Wellman*, 694 S.W.2d at 698, overruled *Shannon*, stating without further elaboration that "despite the fact that the trial counsel failed to object at the time of the judgment's entry, since *sentencing is jurisdictional it cannot be waived by failure to object.*" (emphasis added). Despite comments in some appellate opinions to the contrary, in the context in which it originated, the phrase "sentencing is jurisdictional" is not a reference to the trial court's jurisdiction or the lack thereof. Rather, it is a reference to the appellate court's inherent jurisdiction to correct an illegal sentence. As we noted in *Myers v. Commonwealth*,[4] "It is simply incorrect to say that a court is without jurisdiction to impose an unauthorized sentence. Rather, the imposition of an unauthorized sentence is an error correctable by appeal, by writ, or by motion pursuant to RCr 11.42 or CR 60.02."

■ In *Grigsby v. Commonwealth*, 302 S.W.3d 52, 54 (Ky.2010),[5] we reviewed our earlier cases and concluded that a "sentencing issue" constitutes "a claim that a sentencing decision is contrary to statute, as in *Ware* [[6]], or was made without fully considering what sentencing options were allowed by statute, as in *Hughes*.[[7]]" We further clarified the point in *Travis v. Commonwealth*, 327 S.W.3d 456, 459 (Ky. 2010), by holding that this Court has "inherent jurisdiction to cure such sentencing errors."[8] We therefore regard the phrase, "sentencing is jurisdictional," simply as a manifestation of the non-controversial precept that an appellate court is not bound to affirm an illegal sentence just because the issue of the illegality was not presented to the trial court.

■ Since *Wellman* in 1985, a substantial body of Kentucky law has developed following the principle that appellate review of a sentencing issue is not waived by the failure to object at the trial court level. RCr 10.26 provides a standard of review for alleged errors "not sufficiently raised or preserved for [appellate] review." However, where we have held that certain issues are preserved for appellate review despite there having been no objection in the trial court, it is difficult to conceive a level of inaction that could be regarded as "not sufficiently raised or preserved." When nothing is required to preserve the issue for appellate review, palpable error

---

**4.** 42 S.W.3d 594, 596 (Ky.2001), overruled on other grounds by *McClanahan v. Commonwealth*, 308 S.W.3d 694 (Ky.2010).

**5.** *Grigsby* concluded that the defendant's claim that his guilty plea should be set aside as involuntary because he had not been informed of his right to plead guilty and demand sentencing by a jury rather than the judge was *not* a "sentencing issue." Notably, Grigsby did not challenge the sentence *per se*, but rather claimed that the conviction based upon his guilty plea should be voided on account of his lack of information about sentencing alternatives. Clearly, the legality of the plea itself is not a "sentencing issue."

**6.** *Ware v. Commonwealth*, 34 S.W.3d 383 (Ky. App.2000) (failure of the trial court to determine whether or not the defendant was eligible for probation, as required by KRS 533.010.)

**7.** *Hughes v. Commonwealth*, 875 S.W.2d 99, 100 (Ky.1994) (failure of the trial court to consider all statutory sentencing options prior to imposition of sentence.)

**8.** The sentencing error involved in *Travis* was the imposition of fines and court costs upon an indigent defendant in violation of KRS 534.030(4) and KRS 23A.205(2).

review is superfluous. Thus, the palpable error standard of review under RCr 10.26 is not applicable to appellate review of a true "sentencing issue."

### III. IMPOSITION OF RESTITUTION

#### A. Standards of Review

■ Appellant makes two complaints about the imposition of restitution[9] in the final judgment. First, he argues that the manner by which the trial court fixed and imposed restitution denied him even the minimal indicia of due process to which he was entitled under *Fields v. Commonwealth*, 123 S.W.3d 914 (Ky.App.2003). He also asserts that the imposition of restitution exceeding $100,000.00 violated KRS 533.030(3).

Appellant's claim that the imposition of restitution in excess of $100,000.00 violates KRS 533.030(3) squarely fits within *Grigsby*'s conception of a "sentencing issue" because he alleges that the award of restitution in this case is contrary to statute. This Court will not be bound to affirm a sentence that violates a statute simply be-

cause no objection was made in the trial court. Thus, we conclude that appellate review of that alleged error is not impeded by Appellant's failure to object.

On the other hand, Appellant's more serious concern about the sentencing order is that restitution was imposed without regard for the basic components of fundamental due process, including prior notice of the claim and a meaningful opportunity to be heard. There is no doubt that restitution is a proper component of a judgment imposing a final sentence.[10] It is mandatory under KRS 532.032, and is, therefore, not an illegal sentence *per se*. However, the error claimed here is of a different nature than a sentence that violates a specific statute. It is a procedural deficiency, albeit of constitutional dimensions, more akin to the kind of procedural error alleged in *Montgomery v. Commonwealth*, 819 S.W.2d 713, 720 (Ky.1991). There, a defect in PFO[11] instructions allowed the jury to fix a sentence for the PFO charge without fixing a sentence on the underlying crime. Despite the claim that the error presented a "sentencing is-

---

9. "Restitution," as used in KRS Chapter 532, is defined in KRS 532.350(1)(a) to mean "any form of compensation paid by a convicted person to a victim for counseling, medical expenses, lost wages due to injury, or property damage and other expenses suffered by a victim because of a criminal act."

10. There is broad consensus among state and federal courts that restitution imposed under a statutory scheme of mandatory restitution like Kentucky's, is a part of the criminal sentence. *See United States v. Gibney*, 519 F.3d 301 (6th Cir.2008) citing *United States v. Vandeberg*, 201 F.3d 805, 814 (6th Cir.2000); Alabama, *Roberts v. State*, 863 So.2d 1149, 1155 (Ala.Crim.App.2002); Arizona, *State v. W.*, 173 Ariz. 602, 845 P.2d 1097, 1104 (Ct. App.1992); Colorado, *People v. Shepard*, 989 P.2d 183, 187 (Colo.App.1999); Florida, *Long v. State*, 876 So.2d 718, 718 (Fla.Dist.Ct.App. 2004); Indiana, *McKenney v. State*, 848 N.E.2d 1127, 1129 (Ind.App.2006); Iowa,

*State v. Jose*, 636 N.W.2d 38, 45 (Iowa 2001); Nebraska, *State v. Clapper*, 273 Neb. 750, 732 N.W.2d 657, 661 (2007); New Jersey, *State v. Kemprowski*, 265 N.J.Super. 471, 627 A.2d 1151, 1152 (N.J.App.1993); Maryland, *Chaney v. State*, 397 Md. 460, 918 A.2d 506, 512 (2007); Minnesota, *State v. Pflepsen*, 590 N.W.2d 759, 766 (Minn.1999); Ohio, *State v. Danison*, 105 Ohio St.3d 127, 823 N.E.2d 444, 445 (2005); Oregon, *State v. Smith*, 93 Or.App. 639, 763 P.2d 419, 419 (1988); Pennsylvania, *Commonwealth v. Balisteri*, 329 Pa.Super. 148, 478 A.2d 5, 7 (1984); South Dakota, *United Bldg. Centers v. Ochs*, 781 N.W.2d 79, 83 (S.D.2010); Texas, *Bailey v. State*, 160 S.W.3d 11, 15 (Tex.Crim.App. 2004); Washington, *State v. Dorenbos*, 113 Wash.App. 494, 60 P.3d 1213, 1214 (2002); Wisconsin, *State v. Sweat*, 208 Wis.2d 409, 561 N.W.2d 695, 700 (1997); Wyoming, *Abeyta v. State*, 42 P.3d 1009, 1013 (Wyo.2002).

11. Persistent Felony Offender.

sue," this Court declined to review the issue because it was unpreserved and had no prejudicial effect upon the defendant.

■ Without depreciating the seriousness of Appellant's claim that he was denied due process, we conclude that his argument does not present a "sentencing issue," and therefore is subject to review as unpreserved error under the palpable error standard of RCr 10.26. Under that rule, an unpreserved error may be reviewed on appeal only if the error is "palpable" and "affects the substantial rights of a party." Even then, however, relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26; *Wiley v. Commonwealth*, 348 S.W.3d 570, 574 (Ky.2010).

### B. The Imposition of Restitution Violated Appellant's Due Process Rights

■ Because Appellant did not sufficiently preserve his argument that the restitution was imposed in violation of his due process rights, we review the issue under the palpable error standard of RCr 10.26. In *Ladriere v. Commonwealth,* we held that under that standard, "reversal is warranted 'if a manifest injustice has resulted from the error,' which requires a showing of the 'probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law.'" 329 S.W.3d 278, 281 (Ky.2010) (quoting *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky.2006)). Manifest injustice is found if the error seriously affected the "fairness, integrity, or public reputation of the proceeding." *Martin*, 207 S.W.3d at 4. Upon review of the record in this case and the applicable law, it becomes immediately obvious that the manner in which the trial judge imposed restitution in this case affected the "fairness, integrity, [and] the public reputation of the proceeding," and, accordingly, the order for restitution must

be vacated. *Fields v. Commonwealth* provides support for this holding.

The facts in *Fields* are as follows. After pleading guilty to burglary and receiving stolen property, Fields was sentenced to consecutive prison terms and ordered to pay $140,000.00 in restitution to his victims. The large restitution award was based upon a list of stolen property provided to the trial court by the Commonwealth shortly before the sentencing hearing. Fields was given no prior notice of the restitution claim or the list of items, and was allowed no opportunity during the sentencing hearing to contest the claimed losses or to otherwise ascertain or challenge the validity of the amount claimed.

■ The Court of Appeals held that the trial court's abrupt assessment of restitution denied Fields's due process rights at sentencing. Implicitly recognizing that restitution is a part of the sentence imposed in a criminal case, the Court of Appeals stated, "the due-process clauses of the federal constitution require that sentences not be imposed on the basis of material misinformation, and that facts relied on by the sentencing court 'have some minimal indicium of reliability beyond mere allegation.'" *Id.* at 917 (footnotes omitted). The Court of Appeals found "no factual basis but mere allegations for the amount of restitution Fields has been ordered to pay.... The restitution order thus fails to satisfy even the Constitution's minimal reliability standard." *Id.* Accordingly the Court of Appeals vacated the part of Fields's sentence that ordered him to pay restitution. *Id.* at 918.

■ In *Wiley,* 348 S.W.3d at 575, we expressly affirmed the principles enunciated by the Court of Appeals in *Fields:*

> When ordering restitution, a trial court must base an award on reliable facts. *United States v. Silverman,* 976 F.2d

1502, 1504 (6th Cir.1992). Our Court of Appeals considered a situation similar to the present case, wherein the defendant contested the amount of restitution, yet the trial court denied him a chance to controvert the Commonwealth's evidence. *Fields v. Commonwealth,* 123 S.W.3d 914, 915–16 (Ky.App.2003). The court held that the trial court had deprived the defendant of an opportunity to be heard and adopted the due process standard articulated by the Sixth Circuit in *Silverman:* although a lower standard of due process applies at sentencing, the facts relied on by the court must "have some minimal indicium of reliability beyond mere allegation." *Id.* at 917 (citing *Silverman,* 976 F.2d at 1504). The *Fields* court thus determined that in order to satisfy this standard, the defendant must have some meaningful opportunity to be heard and the record must establish a factual predicate for the restitution order. *Fields,* 123 S.W.3d at 918.

Appellant's case presents an even more egregious due process violation than *Fields,* where the essential "evidence" was provided to the court by a prosecuting attorney, whose ethical duties of candor and honesty to both the court and the defendant offered at least some measure of confidence in the information's accuracy.

Here, the record reflects that the award of restitution imposed against Appellant was based upon unsworn and uncross-examined statements of the victim's mother and nothing else. While we see no basis upon which to impugn her honesty, her statements to the trial court provide no certainty as to the actual medical expenses that her daughter will bear as a result of the crimes committed against her. She

states only that the medicine will cost "over $600.00 a month," beginning at some unspecified date in the future and lasting for an indeterminate period.[12] The span of forty years seems to be a purely arbitrary choice of the trial court bearing no observable relationship to any actual medical expenses.

With restitution having been set in such a capricious fashion, one could not state with any degree of confidence that justice was done for either the Appellant or the victim. From the sketchy information relied upon by the trial court, the victim's actual medical expenses might actually exceed $600.00 per month. These circumstances plainly establish that the trial judge abused his discretion and violated the requirements of *Fields* when he ordered Appellant to pay $600.00 per month for the next forty years.

Having determined that the trial court's assessment and imposition of restitution in this case violated Appellant's right to due process and was palpable error, we reverse the portion of the judgment that imposes restitution. We remand that matter to the trial court for further proceedings. To provide guidance for such further proceedings that will occur in this case, and others that follow, we describe below the measures required to satisfy KRS 532.032 and constitutional due process. We also address, in Section D, *infra,* Appellant's claim that restitution is statutorily limited to an amount no greater than $100,000.00 because that issue may arise again upon remand.

**C. The Essentials of Due Process for Determining Restitution Pursuant to KRS 532.032**

---

**12.** The mother stated only that the disease would be with K.E. for the "rest of her life," not that the medical expense of "over $600.00 a month" would persist for the rest of K.E.'s life.

With *Wiley* and its adoption of the principles stated in *Fields*, we have now firmly established that basic due process standards must be applied when restitution is assessed and imposed as one of the sentencing alternatives under KRS Chapter 532. In directing the courts to include restitution as a part of the sentence in a criminal case, the legislature did not detail the sort of hearing it contemplated for making that determination. In *Hearn v. Commonwealth*, 80 S.W.3d 432, 436 (Ky. 2002), we recognized a clear legislative intent that restitution be established efficiently and fairly as part of the sentencing process in a summary proceeding that "serves judicial economy and the traditional notions of fair play and substantial justice." We observed that "[t]he trial court [in a criminal case] has the statutory authority to establish restitution and is in the best position to make the appropriate and well-informed decision in a fair and impartial manner." *Id.*

We expound upon that observation by noting that, implicit in our statutory scheme requiring restitution, is an adversary hearing, ordinarily conducted in conjunction with the final sentencing hearing, at which the trial court will have broad discretion to make findings based upon reliable information, but not bound by the rules of evidence or traditional rules of pleading. In the great majority of cases, "restitution" as defined in KRS 532.350(1)(a), when not agreed upon or clearly established from the evidence presented during trial, will be readily ascertained and easily verified by medical records, insurance records, receipts, pay records, income tax records, repair estimates, purchase invoices, and the like. In the ordinary case, such losses will have occurred in the relatively recent past, or are reasonably certain to arise in the near future. In such cases, the issue will be summarily resolved with minimal formality and with practical efficiency. However, we recognize that not every disputed issue of restitution can be fairly or efficiently resolved in a summary proceeding like the traditional sentencing hearing. KRS Chapter 532 requires judges to impose restitution when applicable, but it does not compel our trial judges to do so without conducting a proper hearing with whatever degree of formality is necessary in the particular circumstances to assure compliance with constitutional due process. In the more complex claims, with factual issues that do not lend themselves to being reliably resolved in a summary proceeding, the trial judge must exercise the broad discretion of that office to resolve the matter in a way that respects the constitutional rights of all the parties and that achieves substantial justice.

We have not previously detailed the essential elements of due process that must be observed in establishing an order for restitution under KRS 532.032. We have, however, more explicitly described those elements in other criminal contexts.[13] Based upon our consideration of

---

13. For example, in *Commonwealth v. Alleman*, 306 S.W.3d 484, 486 (Ky.2010), we discussed the constitutional due process requirement for those facing the possible deprivation of liberty in a probation or parole revocation The requirements explained in *Alleman* are (a) written notice of the claimed violations of probation or parole; (b) disclosure of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing confrontation; (e) a 'neutral and detached' hearing officer, and (f) a record of written or recorded finders as to the evidence relied upon and reasons for revoking probation or parole. In *Harbin v.*

the statutory scheme for restitution established under KRS Chapter 532, our previous discussion of the matter in *Wiley* (and its discussion of *Fields* ), and due process considerations applied in other areas of criminal law, we conclude that when the issue of restitution under KRS 532.032 has not been resolved by an agreement between the Commonwealth and the defendant, constitutional due process requires an adversarial hearing that includes the following protections:

- reasonable notice to the defendant in advance of the sentencing hearing of the amount of restitution claimed and of the nature of the expenses for which restitution is claimed; and
- a hearing before a disinterested and impartial judge that includes a reasonable opportunity for the defendant, with assistance of counsel, to examine the evidence or other information presented in support of an order of restitution; and
- a reasonable opportunity for the defendant with assistance of counsel to present evidence or other information to rebut the claim of restitution and the amount thereof; and
- the burden shall be upon the Commonwealth to establish the validity of the claim for restitution and the amount of restitution by a preponderance of the evidence, and findings with regard to the imposition of restitution must be supported by substantial evidence.

Notwithstanding the foregoing recitation of the minimal due process requirements, we reiterate that the trial courts retain broad discretion to manage the proceedings as needed to implement the mandate of KRS 532.032 in a manner that protects constitutional due process and achieves substantial justice.

**D. KRS 533.030(3)—The $100,000.00 Limit on Restitution**

As noted above, Appellant's argument that the imposition of restitution in excess of the $100,000.00 violated KRS 533.030(3) is a true "sentencing issue" and we review it despite the lack of preservation. The argument is based upon Appellant's reading of KRS 532.032(1)'s requirement that restitution "shall be ordered in a manner consistent, insofar as possible, with the provisions of this section and . . . KRS 533.030." KRS 533.030(3), in relevant part provides:

> When imposing a sentence of probation or conditional discharge in a case . . . where the victim suffered actual medical expenses . . . the court shall order the defendant to make restitution in addition to any other penalty provided for the commission of the offense . . . . Restitution shall be ordered in the full amount of the damages, unless the damages exceed one hundred thousand dollars ($100,000)[.]

The Commonwealth argues that KRS 533.030(3) does not control in this matter because, on its face, it deals only with restitution imposed with a sentence of probation or conditional discharge, and Appellant was sentenced to imprisonment, not probation or conditional discharge.

We agree with the Commonwealth on this point. Reading the two statutes

*Commonwealth,* 121 S.W.3d 191, 195 (Ky. 2003), we discussed the minimal due process requirements to be observed in forfeiture to the state of property seized under KRS Chapter 218A, as "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," and an evidentiary hearing at which the trial court must determine if the property is sufficiently tainted by the criminal act to be subject to forfeiture, and whether the forfeiture is grossly disproportionate to the particular offense.

together leads us to conclude that the $100,000.00 limitation applies only to restitution that is imposed along with a sentence of probation or conditional discharge.[14] Why the legislature would limit restitution to $100,000.00 when a person is sentenced to probation or conditional discharge, but let it remain unlimited when a person is sentenced to imprisonment is not immediately apparent. However, when the meaning of the law is clear from the language of the statute, and its effects are not absurd, we need not attempt to explain why the General Assembly chose to legislate as it did.

## IV. THE JAIL FEE

 Appellant finally argues that the imposition of a jail fee against him was erroneous because he was deemed an indigent person for the purposes of receiving appointed counsel. KRS 441.265(1) requires that "[a] prisoner in a county jail shall be required by the sentencing court to reimburse the county for expenses incurred by reason of the prisoner's confinement ... except for good cause shown." Accordingly, the trial court imposed at sentencing a jail fee of $22.00 for each of the 233 days Appellant had spent in the county jail, for a total of $5,126.00. As with the issue of restitution, Appellant made no contemporaneous objection to the imposition of the jail fee. However, we need not consider whether the failure to preserve the issue impedes appellate review because it is readily apparent that Appellant is entitled to no relief on this claim.

Appellant supports his argument by citing KRS 534.030(4), which states, "Fines required by this section shall not be imposed upon any person determined by the court to be indigent pursuant to KRS Chapter 31." Although included in the judgment of conviction and sentence, the jail fee was not a "fine," as referenced in KRS 534.030.[15] We therefore conclude that KRS 534.030(1) does not apply to the imposition of the jail fee.

Appellant also relies upon KRS 31.110(1), which provides that a "needy person" in a criminal proceeding, who has qualified for the appointment of counsel and the provision of other "necessary services and facilities of representation including investigation and other preparation" cannot be assessed a jail fee because the statute also directs that "the courts in which the defendant is tried shall waive all costs." We do not construe the jail reimbursement fee assessed under KRS 441.265(1) to be among the "costs" referred to in KRS 31.110(1)(b).

"Costs" as used in KRS 31.110(1) refers to those expenses more directly connected to the defense of the criminal charges. The expenses borne by the county to house an inmate are not "costs" associated with the prosecution or defense of the case. Rather, the jail fee is required to "reimburse the county for expenses incurred by reason of the prisoner's confinement." KRS 441.265(1). Moreover, KRS 441.265 has its own provisions for accommodating the needs of impoverished inmates. The judge may decline to impose the fee "for good cause shown," which, in some circumstances, could include the ina-

---

14. KRS 533.030(3)(d) clarifies that damages beyond the amount of restitution ordered by the court may be sought in a civil action.

15. KRS 534.030(1) provides, "Except as otherwise provided for an offense defined outside this code, a person who has been convicted of

any felony shall, in addition to any other punishment imposed upon him, be sentenced to pay a fine in an amount not less than ... $1,000 ... and not greater than ... $10,000 ... or double his gain from commission of the offense, whichever is the greater."

bility to pay. Plus, in setting the rate to be charged, the jailer is directed to consider "the ability of the prisoner confined to the jail to pay, giving consideration to any legal obligation of the prisoner to support a spouse, minor children, or other dependents." KRS 441.265(2)(b); *see also* KRS 534.045(2) (noting with regard to a similar fee for misdemeanors, "In determining whether a reimbursement fee as described in subsection (1) of this section is to be assessed, and in establishing the amount of the fee, the court shall consider evidence relevant to the prisoner's ability to pay the fee . . . .").

Appellant has identified no grounds upon which the assessment of the jail fee should be set aside, so we therefore affirm that portion of the judgment.

### V. CONCLUSION

For the reasons set forth above, we affirm the imposition of jail fees against Appellant in the sum of $5,126.00. Based upon the Commonwealth's concession, we reverse the judgment insofar as it imposes courts costs. We also reverse the imposition of restitution contained in the judgment and remand the matter to the Hickman Circuit Court for further proceedings to determine the issue of restitution in a manner consistent with this opinion.

All sitting. All concur.